

**PELTON GRAHAM LLC**

111 BROADWAY, SUITE 1503, NEW YORK, NEW YORK 10006
T 212.385.9700 ‖ F 212.385.0800 ‖ WWW.PELTONGRAHAM.COM

**BRENT E. PELTON, ESQ.**                                                      FEBRUARY 4, 2019
PELTON@PELTONGRAHAM.COM

**VIA ECF and EMAIL**

Honorable Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square, Courtroom 618
New York, NY 10007
Failla_NYSDChambers@nysd.uscourts.gov



      **Re:** *Sooknanan, et al. v. Ratha Restaurant, Inc., et al.*
          **Civil Action No. 18 Civ. 3218 (KPF)**

Dear Judge Failla:

    As Your Honor is aware, this firm represents named plaintiff Amanda Sooknanan ("Sooknanan") and opt-in plaintiff Juan Bruno ("Bruno" and, together with Sooknanan, the "Plaintiffs") in the above-referenced action. We write with consent of counsel for defendants Ratha Rest. Inc., Aris Patilis, George Sikolas and Tom Patilis (together, the "Defendants" and, together with Plaintiffs, the "Parties"). This letter is submitted pursuant to Your Honor's January 18, 2019 Order (Dkt. No. 30) directing the parties to submit the settlement agreement on or before February 4, 2019 for the Court's review in accordance with the Fair Labor Standards Act and the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Counsel for the Parties respectfully submit that the attached negotiated Settlement Agreement (Exhibit A)[1] constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

**I.     Introduction**

    Sooknanan commenced this Action by filing a Collective and Class Action Complaint (Dkt. No. 1, the "Complaint") on behalf of herself and similarly situated employees of Defendants on April 12, 2018, seeking unpaid minimum wage and overtime premium pay pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and the New York Labor Law ("NYLL") § 650 *et seq.*, as well as unpaid spread-of-hours premium pay, unpaid gratuities and damages for wage notice and wage statement violations pursuant to the NYLL. Sooknanan worked as a server for Defendants' café and restaurant located in the Bronx, New York.

---

[1] The attached Settlement Agreement is executed by Plaintiffs. Defendants anticipate signing and submitting a fully-executed Settlement Agreement to the Court by February 6, 2019.

On July 6, 2018, Your Honor so-ordered the Parties' stipulation and proposed order for conditional certification of a FLSA collective action. (Dkt. No. 18). Counsel for the Parties appeared for an initial conference on July 13, 2018, where Your Honor set a case management and scheduling order. (*See* Dkt. No. 21). On October 19, 2018, Bruno joined the action by filing a consent to become a party plaintiff form. (Dkt. No. 24).

Pursuant to the Court's scheduling order, the Parties each exchanged Fed. R. Civ. P. 26(a) initial disclosures, Plaintiffs exchanged written demands for production of documents and interrogatories and Defendants provided certain documents in response to the demands. Shortly following the close of the opt-in period, the parties engaged in settlement discussions regarding the Plaintiffs. To aid in the discussions, Plaintiffs provided Defendants with a damages analysis for the individuals. Ultimately, the parties were able to reach a settlement of the action on an individual basis for Sooknanan and Bruno.

## II. The Settlement Accounts for Litigation Risk and Compensates Plaintiffs for Substantial Damages

Throughout this litigation, the parties have had several major points of contention. First, the parties disputed whether Plaintiff Sooknanan was paid the proper minimum wage rate and whether Defendants retained a portion of Plaintiff Sooknanan's tips. Plaintiff Sooknanan's minimum wage claims are based on her allegation of working seven (7) hours per shift (or thirteen (13) hours per double shift) with a forty-dollar ($40.00) cash wage per shift, which falls below the minimum wage rate. Defendants dispute the wage rate as Plaintiff was paid her wages in cash and there are no corroborating documents. Plaintiff Sooknanan also claims that Defendants retained a portion of her earned tips. Again, the Parties do not have documents to prove or disprove this claim and would therefore have to rely on testimony. Plaintiff Sooknanan also claims that she was not paid the proper spread-of-hour premium pay for days in which she worked a double shift or overtime premium pay at one and one-half (1.5) times the applicable minimum wage for weeks in which she worked in excess of forty (40) hours. Defendants contend they paid the proper overtime rate. Plaintiff Bruno claims he was not paid spread-of-hours premium or overtime premium pay, as he was paid at a straight-time rate for all hours worked, and he typically worked shifts in excess of ten (10) hours in a day, six (6) days a week, for a total of approximately sixty-one (61) hours per week. Defendants, again, contend that they paid proper spread-of-hours and overtime premium pay to Bruno, and dispute the number of hours worked as alleged by Bruno. Finally, while Plaintiffs brought claims for damages arising out of Defendants' failure to provide proper wage notices or wage statements, Defendants state that Plaintiffs made it impossible to produce such notices as they allege Plaintiffs failed to cooperate and provide necessary information for such notice. Finally, Defendants claim that their establishment does not meet the jurisdictional requirement of $500,000 gross annual income per the FLSA.

Defendants produced certain time payroll records during the litigation. While Plaintiffs would dispute the accuracy and completeness of these records at trial, Plaintiffs recognize that such documents could potentially limit the amount of damages Plaintiffs could recover at trial if a factfinder credited Defendants' materials in their entirety.

HON. KATHERINE POLK FAILLA
FLSA SETTLEMENT FAIRNESS LETTER
PAGE 3 OF 5

Due to the fact-intensive nature of these inquiries, it is likely that substantive answers to these disputed issues would not be resolved until after significant additional discovery and motion practice, if not a trial. The Plaintiffs would likely seek a dispositive motion on certain of the disputed legal issues as described above but, given the lack of documents, certain claims would likely have to resolved through trial. Based on these disputes, the parties engaged in good-faith, arm's-length settlement negotiations regarding not only Plaintiffs' FLSA claims, but also their pendent state law claims.

As stated above, Plaintiffs created damages analyses based on Plaintiffs' best recollection (Defendants did not produce complete and accurate pay records to rely on) as to their dates of employment with Defendants, the hours that they worked, and the wages that they received for their work. The total estimated damages calculated was $117,550.09, including liquidated damages, interest, as well as statutory damages for plaintiffs' claims under NYLL § 195, and $39,352.37 in actual unpaid wages under the FLSA and NYLL. The settlement amount (i.e. $60,000.00) covers all of the actual unpaid wages calculated plus a substantial portion of the statutory damages, liquidated damages and interest. Furthermore, the settlement amount going directly to Plaintiffs after attorneys' fees ($39,480.89) represents a more than full recovery of actual unpaid wages calculated. The parties believe this is a fair recovery based on the risks associated with establishing the claims and the calculated damages.

### III.  Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $60,000.00 (the "Settlement Amount"). Of that amount, $39,480.89 (the "Net Settlement Amount") is payable directly to Plaintiffs. The remaining $20,519.11 represents $778.66 in expenses for counsel's costs for filing and service of the complaint and mailing the 216(b) Notice, plus one-third (33.33%) of the Settlement Amount as attorneys' fees, after subtracting those expenses (i.e., $19,740.45).  The allocation of the Net Settlement Amount was calculated based on Plaintiffs' percentage of damages from Plaintiffs' damages analysis which utilizes Plaintiffs' best recollection of hours worked and wages received by Defendants.

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage and hour release of claims for any claims arising before Plaintiffs signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or the Settlement.

The Second Circuit in *Cheeks* questioned the propriety of an FLSA settlement agreement in another case that included: (1) "a battery of highly restrictive confidentiality provisions" (2) an overbroad release that would waive both current and future claims and (3) a fee for plaintiffs' attorneys of "between 40 and 43.6 . . . without adequate documentation to support such a fee award." The Settlement Agreement before Your Honor, however, (1) does not contain a restrictive confidentiality provision; (2) does not contain a release which is one-sided or is to be applied to

future claims and (3) the Plaintiffs' attorneys fees are standard. Most importantly, and unlike the settlement agreement at issue in *Cheeks,* the Settlement Agreement is available to Your Honor to explore and to assess whether it was likely the "fair result of a balanced negotiation, in which Plaintiffs were represented by able counsel."[2]

### IV. Plaintiffs' Attorney's Fees and Expenses

As set forth in the attached Affidavit of Brent E. Pelton, Esq. (Exhibit B), as of February 4, 2019, Plaintiffs' counsel had spent more than 63 hours in prosecuting and settling this matter, resulting in a lodestar of $18,089.14. Plaintiffs' counsel had spent $778.66 in actual litigation costs. The portion of the settlement amount that plaintiffs seek as attorney's fees (i.e. $19,740.45) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, which is less than the lodestar amount and is consistent with what was agreed upon between Plaintiffs and their counsel in their retainer agreements and the consent to become party plaintiff form filed with the Court. The retainer agreement between Plaintiffs and their counsel set forth a contingency fee of one-third (1/3) of any settlement, plus reimbursement of actual litigation costs.[3]

The hourly billing rates utilized by Plaintiffs' counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Southern District of New York. Accordingly, Plaintiffs' counsel submits that the attorney's fees component of the settlement is fair and reasonable.

### V. The Court Should Find That the Settlement Is Fair and Reasonable

A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).[4] Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking*

---

[2] *Lola v. Skadden,* No. 13-cv-5008 (RJS), 2016 U.S. Dist. LEXIS 12871, at *4 (S.D.N.Y. Feb. 3, 2016).

[3] Bruno did not sign a retainer agreement but his Consent to Become a Party Plaintiff form contains a similar provision regarding Pelton Graham's intention to seek one-third of the overall recovery as attorneys' fees.

[4] The parties note that *Cheeks* relies heavily on the Eleventh Circuit's decision in *Lynn's Food Stores, Inc. v. United States Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982), and that the Eleventh Circuit itself has subsequently contemplated that the supervision doctrine laid out in that case may apply only where a "compromise" of an FLSA claim has occurred. *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009).

Case 1:18-cv-03218-KPF   Document 32   Filed 02/05/19   Page 5 of 6
Courtesy Copy

Hon. Katherine Polk Failla
FLSA Settlement Fairness Letter
Page **5** of **5**

*Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations between experienced counsel. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. As explained above, the settlement represents a substantial portion of possible recovery under the FLSA, including more than the alleged actual unpaid wages. Settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation. Defendants asserted legitimate substantive defenses which highlighted substantial risk to Plaintiffs' ability to continue this FLSA litigation. Arm's-length negotiations between knowledgeable counsel followed, culminating in a negotiated resolution.

*   *   *   *   *

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The Parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiffs and respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

Respectfully submitted,

*/s/ Brent E. Pelton*

Brent E. Pelton, Esq. of
PELTON GRAHAM LLC

Enclosure

cc:   Demetrios Adamis, Esq.
      dadamis@optonline.net

      *Attorney for Defendants*

Application GRANTED. The Court is in receipt of the parties' settlement agreement. The Court has reviewed the proposal in light of *Cheeks* v. *Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), *Lopez* v. *Nights of Cabiria*, 96 F. Supp. 3d 170 (S.D.N.Y. 2015), and *Wolinsky* v. *Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012), and finds that the settlement is fair. The Court notes that the attorneys fees, provided for in Section 1(a)(iii) of the settlement agreement, were calculated using the percentage method and represent one third of the total settlement amount. While the Court finds those fees to be reasonable, the Court does not make any finding as to the reasonableness of counsels hourly rate.

Dated:    February 5, 2019　　　　　　　SO ORDERED.
          New York, New York

*(signature: Katherine Polk Failla)*

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE